**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | |
| **Plaintiff,** | **Docket No. 23-CR-30014-MGM** |
| **v.** | |
| **LOUIS R. MASASCHI and** **JEANNETTE NORMAN,** | |
| **Defendants.** | |

GOVERNMENT'S MOTION TO FIND DEFENDANT JEANNETTE NORMAN IN BREACH
OF HER PLEA AGREEMENT AND TO RELEASE THE GOVERNMENT FROM ITS
OBLIGATIONS UNDER THE PLEA AGREEMENT

The United States of America, by Leah B. Foley, United States Attorney for the

District of Massachusetts and Assistant United States Attorneys Steven H. Breslow and Caroline

Merck (the "Government"), respectfully requests that this Court find that the defendant Jeannette

Norman ("Norman") breached her Plea Agreement and, accordingly release the Government from

its obligations under the Plea Agreement, including but not limited to its sentencing

recommendation and to pursue any charges that would be dismissed under the Plea Agreement.[1]

    1.    Factual and Procedural Background

    a.    The Indictment

On April 13, 2023, the Grand Jury returned an Indictment charging Norman and her

husband, Louis R. Masaschi ("Masaschi") with Conspiracy to Commit Wire Fraud in violation of

---

[1] Pursuant to Local Rule 7.1(a)(2), the Government certifies that it attempted to confer with Attorney Yannetti to resolve or narrow the issue. On June 30, 2026, Assistant United States Attorney Steven H. Breslow sent a letter by email to Attorney Yannetti, stating its intention to file the instant motion and setting forth generally the facts and caselaw contained herein. On July 8, 2026, Attorney Yannetti responded by email that the defense disagrees that Norman breached the Plea Agreement.

1

18 U.S.C. § 371 (Count One); Wire Fraud in violation of 18 U.S.C. §§ 1343 and 2 (Counts Two and Three); and Aggravated Identity Theft in violation of 18 U.S.C. §§ 1028A and 2 (Count Four). (D.4).

The Indictment alleged that from on or about April 7, 2018 through in or about January 2020, Masaschi and Norman conspired with each other and others[2] to defraud financial institutions and commercial lenders, including but not limited to Commercial Lender 1 (later identified as Grand Coast Capital Fund I, LLC ("Grand Coast")), by providing, including by email, materially false, fictitious, and fraudulent financial information, including false rent rolls and fraudulent lease agreements.  Id., ¶¶ 7 *et seq.*

b.    <u>The Identification of Fraudulent Proceeds Transferred to the Trust Account</u>

During the course of its post-indictment investigation, the Government determined that: (1) Norman and/or Masaschi had defrauded numerous other financial institutions and lenders, including (as relevant to this motion) Security Mutual Life Insurance Co. ("SMLIC") and Freedom Credit Union ("FCU"); (2) Norman and/or Masaschi had received more than $2 million of the SMLI and FCU loan fraud proceeds into an FCU account owned by Norman in the name of 1506 Riverdale, LLC; (3) Norman and/or Masaschi then transferred $440,000 of those funds into a Merrill Lynch account that they jointly owned; and (4) Norman and/or Masaschi then engaged in a complex set of layering transactions that moved those funds (increased in value to $485,783) into a UBS account that they jointly owned and then through eight other UBS accounts, all of which were owned by Norman, before being deposited into an account in the name of "The LM and JN Revocable Trust dtd 11/18/2019 (Jeannette Norman Trustee) (the "Trust Account").

---

[2] The Government later charged Norman's sister, Christine Gendron, who pleaded guilty in a similar case. *United States v. Christine Gendron*, 25-CR-30027-MGM.

Exhibit 1 attached hereto (Financial Flow Chart).

   c.  <u>The Asset Dissipation Warnings</u>

 On August 13, 2024, the Government sent an asset dissipation warning letter by email to counsel for Norman (David Yannetti) and counsel for Norman's co-defendant, Louis R. Masaschi (Brad Bailey).[3] Exhibit 2 attached hereto[4]. The letter stated in pertinent part:

   i.  The above-captioned Indictment (D.4) alleges that Norman and Masaschi committed four offenses in connection with three loans ($350,000, $765,000, and $875,000) that they fraudulently obtained from Grand Coast Capital Fund I, LLC ("Grand Coast"). The Indictment contains a Forfeiture Allegation that includes substitute asset provisions. Id. at p. 11 (citing 28 U.S.C. § 2461(c) and 21 U.S.C. § 853(p)). In addition, conviction on any of the fraud counts will give rise to a restitution obligation equal to the amount of the loans ($1,990,000).

   ii.  The Government is investigating other similar frauds committed by Norman and Masaschi, including a $6.25 million loan issued by FCU on or about March 6, 2017.

   iii.  The Government has identified the Trust Account and determined that as of May 31, 2024, the Trust Account's balance was $763,510. Exhibit 2 at p.7 (May 2024 Account Statement attachment). The Government considers the Trust Account funds both directly traceable to the FCU fraud and other frauds under investigation as well as substitute assets in the Grand Coast fraud.

---

[3] Attorney Jared Olanoff filed his notice of appearance for Masaschi on November 12, 2024. (D.63).
[4] The Government is publicly filing a portion of this exhibit with redactions because it contains personally identifying information.

iv.      However, on or about December 19, 2023, Norman (and possibly Masaschi) falsely[5] told their broker at LPL Financial, LLC ("LPL"), Michael Poggi, that the funds for the Trust Account "was family money that was saved a long time ago." Exhibit 2 at p.6 (Broker's Contact Notes).

v.      Further, Title 18, United States Code, 2232(a) makes it a felony to impair the Government's ability to seize property.

vi.      Accordingly, the Government expects Norman and Masaschi not to transfer, liquidate, encumber, or otherwise dissipate the funds in the Trust Account. The Government will treat such conduct as potentially violative of Section 2232(a) and will consider any such conduct as an important factor in its further charging decisions, plea negotiations, and sentencing positions.

vii.      Please present this letter to your clients as soon as possible, obtain their signatures that they have acknowledged the content of this letter, and return the executed letters to me.

Neither Attorney Yannetti nor Attorney Bailey provided the Government with an executed copy of the asset dissipation letter.

On September 3, 2024, the Government forwarded its August 13, 2024 email and attachments to Attorney Yannetti and Attorney Bailey and reiterated its request that you and he convey the asset dissipation letter to your clients.  Exhibit 3 attached hereto (without attachments). Neither attorney provided the Government with an executed copy of the asset dissipation letter.

d.      The Defendants' Guilty Pleas, Plea Agreements and Forfeiture Orders.

On April 22, 2025, Masaschi pleaded guilty, pursuant to a written Plea Agreement (D.99

---

[5] Underlining in original.

(with Statement of Facts redacted) and 102 (sealed)), to Counts One through Three of the Indictment. (D.104).

On September 19, 2025, Norman pleaded guilty, pursuant to a written Plea Agreement (D.119 (with Statement of Facts redacted) and D.120 (sealed)), to Counts One through Three of the Indictment. (D.126). The Government agreed, among other things:

> i.  "to dismiss Count Four following the imposition of Defendant's sentence and not to charge any other violations in connection with Defendant's conduct set forth in the Statement of Facts" (D.119, p.2);
>
> ii.  to recommend a sentence of incarceration of 45 months (id., p.3); and
>
> iii.  "to recommend that Defendant serve her sentence consecutive with (either before or after) the sentence of Louis R. Masaschi" (id., p.4).

Norman agreed to pay a total of $20,099,295 in restitution, including $1,554,378 to SMLI, $5,370,037 to FCU, and $1,639,302. Id., p.4-5. Norman also admitted that "$20,099,295 is subject to forfeiture on the grounds that it is equal to the amount of money involved in Defendant's offense." Id., p.6.

Norman's Plea Agreement states that "Defendant also understands that the Government will object to any reduction in Defendant's sentence based on acceptance of responsibility if: . . . (b) by the time of sentencing, Defendant has committed a new federal or state offense, or has *in any way* obstructed justice." Id., p.3 (emphasis added). Paragraph 9 of Norman's Plea Agreement further states that "Defendant understands that if Defendant breaches any provision of this Agreement, violates any condition of Defendant's pre-trial release or commits any crime following Defendant's execution of this Plea Agreement, Defendant cannot rely upon such conduct to

withdraw Defendant's guilty plea.  Defendant's conduct, however, would give the U.S. Attorney the right to be released from the U.S. Attorney's commitments under this Agreement, to pursue any charges that were, or are to be, dismissed under this Agreement . . . . "  Id., pp. 7-8.

On January 23, 2026, the Court entered an Order of Forfeiture (Money Judgment) against Norman in the amount of $20,009,295.  (D.138).  On January 23, 2026, the Court entered an Order of Forfeiture (Money Judgment) against Masaschi in the amount of $19,305,473.  (D.140).

e.        Norman's Failure to Provide Financial Information and Aborted Sentencing

On March 31, 2026, the Court scheduled Norman's sentencing for June 10, 2026.  (D.144). On June 3, 2026, the United States Probation Office issued a final Presentence Investigation Report for Norman ("the PSR").  According to her PSR's Net Worth Analysis, "the defendant failed to furnish the Probation Department with a completed financial statement."  PSR, ¶ 229.

On June 8, 2026, Attorney Yannetti filed a sentencing memorandum for Norman.  (D.147). The sentencing memo disputed her role as a co-equal participant with Masaschi in the crimes and cast her as "first-class mother whose devotion to her son and overriding desire to keep her family intact led her to willfully blind herself to her husband's oftentimes surreptitious efforts to fraudulently obtain funding for his failing realty company."  Id. at 5-6.

On June 9, 2026 (i.e., shortly before the scheduled sentencings of Norman and Masaschi), following an inquiry from the Government concerning the state of the Trust Account, Attorney Yannetti provided a May 2026 account statement for the Trust Account that stated the account balance was $614,107, had sustained "outflows" of $32,508 year to date (January 1, 2026 to May 31, 2026), and had sustained "change in market value" of a $36,168 increase. The difference between the Trust Account balance on May 31, 2024 ($763,510) (i.e., shortly before the asset dissipation letter was issued) and the Trust Account balance on May 31, 2026 was $149,403.  Later

that day, the Government filed a motion to continue both sentencings based upon this new information (D.154), and the Court granted the Government's motion until July 22, 2026 (D.159-160).

    f.  <u>Norman's Dissipation of the Trust Account</u>

On June 22 2026, LPL provided its response to a Trial Subpoena that sought records related to the Trust Account.  According to the LPL records,

    i.  Between September 4, 2024 (*i.e.*, one day after the Government forwarded to Attorney Yannetti and Attorney Bailey another copy of the August 13, 2024 asset dissipation warning letter), and April 17, 2026, the Trust Account sustained 33 automated clearing house ("ACH") direct deposit withdrawals of funds totaling $267,500.  Exhibit 4 attached hereto. These withdrawals are set forth in the following chart:

| Date | Amount |
|---|---|
| 9/4/2024 | $ 5,000 |
| 9/4/2024 | $ 5,000 |
| 9/4/2024 | $ 5,000 |
| 9/4/2024 | $ 5,000 |
| 10/1/2024 | $ 5,000 |
| 10/1/2024 | $ 5,000 |
| 10/1/2024 | $ 5,000 |
| 10/1/2024 | $ 5,000 |
| 10/1/2024 | $ 5,000 |
| 10/29/2024 | $ 5,000 |

| Date | Amount |
|------|--------|
| 10/31/2024 | $ 5,000 |
| 10/31/2024 | $ 5,000 |
| 10/31/2024 | $ 5,000 |
| 11/7/2024 | $ 50,000 |
| 12/5/2024 | $ 5,000 |
| 12/5/2024 | $ 5,000 |
| 12/5/2024 | $ 5,000 |
| 12/5/2024 | $ 5,000 |
| 12/5/2024 | $ 5,000 |
| 12/18/2024 | $ 5,000 |
| 12/24/2024 | $ 5,000 |
| 12/24/2024 | $ 5,000 |
| 1/8/2025 | $ 5,000 |
| 1/13/2025 | $15,000 |
| 2/14/2025 | $15,000 |
| 3/13/2025 | $15,000 |
| 7/21/2025 | $10,000 |
| 10/2/2025 | $10,000 |
| 12/11/2025 | $10,000 |
| 1/22/2026 | $15,000 |
| 2/10/2026 | $ 6,500 |
| 4/1/2026 | $ 5,000 |

| Date | Amount |
|------|--------|
| 4/17/2026 | $  6,000 |

ii.      Norman generally directed these withdrawals by emails from her email account, jllrealty@aol.com, to Poggi.  Exhibit 5 attached hereto.

iii.      Norman specified the recipient account, which primarily belonged to one of her companies, Longmeadow Hospitality, LLC.

iv.      In many of these emails, Norman directed Poggi to break down the transactions in $5,000 increments.  For example, on October 24, 2024, Norman wrote Poggi, "Can I please withdraw $25,000 (in $5,000 increments) to my account Longmeadow Hospitality, LLC."

**Poggi, Michael**

| | |
|---|---|
| **From:** | Jeannette Norman <jllrealty@aol.com> |
| **Sent:** | Thursday, October 24, 2024 7:14 AM |
| **To:** | Poggi, Michael |
| **Subject:** | Withdrawel |

Good Morning Mike,
Hope you and the family are well.
Can I please withdraw $25,000 (in $5,000 increments) to my account  Longmeadow Hospitality LLC.

Best,
Jeannette

On June 11, 2026, the FBI conducted an interview of Poggi, who stated that: (1) Norman emailed him repeatedly to request disbursements from the Trust Account; (2) he routinely called clients to ensure that such requests were valid; (3) he recalled speaking with Norman directly and confirming her requests.  Exhibit 6 attached hereto (FD-302 of interview).  On June 24, 2026, following receipt of LPL's Trial Subpoena response, the FBI conducted another interview of Poggi,[6] who stated: (1) Poggi is required by law to inquire about the source of funds when a new

---

[6] Poggi clarified that he is the President of M. Scott Investment Services, which provides

client invests their money with him; (2) Poggi began investing Norman's money in 2023, after UBS terminated its relationship with Norman due to her indictment; and (3) Poggi specifically asked Norman if the funds were from fraudulent sources, and Norman (with Masaschi present) stated that they were not and that the money came from a family inheritance.  Exhibit 7 attached hereto (FD-302 of interview).

      2.       <u>Principles of Law</u>

In the First Circuit, "the factual determination of whether there has been a breach of the plea agreement lies with the trial judge" and the Court of Appeals "will not reverse the factual determinations of a district court in relation to the breach of a plea agreement unless it is clearly erroneous." *United States v. Tilley*, 964 F.2d 66, 71 (1st Cir. 1992).

In *Tilley*, "[t]he district court here held an evidentiary hearing on the issue of whether or not Tilley had violated his plea agreement, properly allocating the burden of proof to the Government to show that there had been a substantial breach of the plea agreement, *see United States v. González-Sánchez*, 825 F.2d 572, 578 (1st Cir. 1987), and asking that they do so by a preponderance of the evidence. *See United States v. Verrusio*, 803 F.2d 885, 891 (7th Cir. 1986)." *Id.* (affirming district court's conclusion that Tilley violated the terms of his plea agreement by providing false testimony and thus released the Government from its obligations under it).

The First Circuit has recognized that "[c]ourts look at sentencing agreements and plea agreements as contracts." *United States v. Bradstreet*, 207 F.3d 76, 80 (1st Cir. 2000) (stating that "[i]t is well settled that when the government breaches a plea agreement, the defendant either can seek specific performance or can withdraw from the agreement."); *see United States v. Santiago-Gonzalez*, 66 F.3d 3, 6-7 (1st Cir. 1995) (applying contract law principles to defendant's breach of

---

investment advice, and that LPL is a broker-dealer that actually holds the investments.

a plea agreement and holding that because the defendant breached his obligation to be completely truthful, the Government was entitled to exercise its discretion not to file a downward departure motion under USSG § 5K1.1.).

As the Seventh Circuit elaborated:

> Plea agreements are treated like contracts, and so our determination of breach must be made 'in light of the parties' reasonable expectations' upon entering the agreement. In general, a defendant's substantial breach of an unambiguous term of a plea agreement frees the government to rescind the deal. In addition, in order to pull out of a plea agreement, the government need only prove substantial breach on the part of the defendant by a preponderance of the evidence.

*United States v. Kelly*, 337 F.3d 897, 901-02 (7th Cir. 2003) (citations omitted); *see United States v. Byrd*, 413 F.3d 249, 251 (2d Cir. 2005) (*per curiam*) (holding that the district court properly applied a preponderance of the evidence standard in determining whether the defendant breached the plea agreement).

As the Third Circuit observed:

> [A] plea agreement necessarily 'works both ways. Not only must the government comply with its terms and conditions, but so must [the defendant].; '[A] defendant should not be permitted "to get the benefits of [his] plea bargain, while evading the costs[,]" we said. Considering the needs of the criminal justice system generally, we observed that failure to 'enforce a plea agreement against a breaching defendant ... would have a corrosive effect on the plea agreement process.'

*United States v. Yusuf*, 993 F.3d 167, 176 (3rd Cir. 2021) (citations omitted).

3.   <u>Because Norman Breached Her Plea Agreement, the Government Should Be Released From Its Obligations Under the Plea Agreement</u>

As set forth above, first on August 13, 2024 and again on September 3, 2024, the Government informed Norman that: (1) it deemed the Trust Account funds to be both directly

traceable to the FCU fraud and other frauds under investigation as well as substitute assets in the indicted Grand Coast fraud; (2) Section 2232(a) makes it a felony to impair the Government's ability to seize property; (3) Norman and Masaschi should not "transfer, liquidate, encumber, or otherwise dissipate the funds in the Trust Account"; and (4) the Government will "treat such conduct as potentially violative of Section 2232(a) and will consider any such conduct as an important factor in its further charging decisions, plea negotiations, and sentencing positions."

Nonetheless, between September 4, 2024 and April 17, 2026, Norman directed 33 separate withdrawals of funds totaling $267,500 of the Trust Account's funds.

The Government deems Norman's direct contravention of the asset dissipation warning letter and violation of Section 2332(a) to constitute a substantial breach of her Plea Agreement, in that it amounts to a new federal offense and obstruction of justice. The Government therefore requests an Order releasing it from its obligations under the Plea Agreement.

4.      Conclusion

Because the Government has developed far more than a preponderance of the evidence that Norman dissipated $267,500 of the Trust Account in spite of the asset dissipation warning letter and in violation of federal law, the Government respectfully moves the Court to find that Norman breached her Plea Agreement and, accordingly, to release the Government from its commitments under that Plea Agreement, including but not limited to its sentencing recommendation and to pursue any charges that were, or are to be, dismissed under this Agreement.

Respectfully submitted,

LEAH B. FOLEY
United States Attorney

STEVEN BRESLOW   Digitally signed by STEVEN BRESLOW
Date: 2026.07.08 17:20:16 -04'00'

By:      /s/ Steven H. Breslow
STEVEN H. BRESLOW

12

(NY2915247)
Assistant U.S. Attorney
300 State Street, Suite 230
Springfield, MA 01105
413-785-0330
steve.breslow@usdoj.gov


By:    */s/ Caroline Merck*
CAROLINE MERCK
Assistant U.S. Attorney
300 State Street, Suite 230
Springfield, MA 01105
413-785-0111
caroline.merck@usdoj.gov

## Certificate of Service

I hereby certify that this document will be filed by ECF and thus sent to the registered participants as identified on the Notice of Electronic Filing.

By:    */s/ Steven H. Breslow*
STEVEN H. BRESLOW
Assistant U.S. Attorney

Dated:  July 8, 2026